UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL DIXON, | No. 2:15-cv-2372 KJM AC P |
| Plaintiff, | |
| v. | ORDER |
| D. OLEACHEA, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, currently incarcerated at California State Prison Corcoran, who proceeds pro se with a civil rights complaint filed pursuant to 42 U.S.C. § 1983, and a request for appointment of counsel. Plaintiff has paid the filing fee. Plaintiff challenges the alleged conduct of prison officials during plaintiff's incarceration at California State Prison Sacramento (CSP-SAC). This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c).

Upon screening plaintiff's complaint pursuant to 28 U.S.C. § 1915A(a), the undersigned finds that it states potentially cognizable claims for relief against defendants Oleachea, Sandoval and Hall, but not against defendants Lieber or Virga. The court accords plaintiff the option of proceeding on his original complaint, as construed herein, or filing a First Amended Complaint in which he attempts to add one more claim against defendant Oleachea.

////

1

I.   Screening of Plaintiff's Verified Complaint

    A.   Legal Standards for Screening Prisoner Civil Rights Complaint

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly at 555).

To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."' Iqbal at 678 (quoting Twombly at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly at 557).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See

Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

### B. Plaintiff's Allegations

Plaintiff's allegations focus on the challenged conduct of defendant D. Oleachea, a CSP-SAC correctional officer (CO). On February 6, 2011, plaintiff was visiting with his wife in the prison visiting area. After about 45 minutes, plaintiff was called to the podium and directed to the strip out area, where he was searched. The search was triggered by a report from defendant Oleachea, who was operating the surveillance camera that scanned the visiting room, that plaintiff appeared to take and/or hold a $20 bill in his hand. The search of plaintiff failed to reveal any money or other contraband. Nevertheless, plaintiff's visit was terminated and he was issued a Rules Violation Report (RVR) (Log No. B-11-02-013), alleging "Possession of Contraband (Money)." See ECF No. 1 at 16.[1] Plaintiff wrote a letter of complaint to defendant D. Lieber ("the Chief Disciplinary Officer and Associate Warden in charge of reviewing all administrative appeals," see Complaint (Cmplt.), ECF No. 1 at 2, ¶ 4), who allegedly never responded. Plaintiff was found "Not Guilty" at the subsequent disciplinary hearing held March 7, 2011.

Thereafter, on November 6, 2011, plaintiff was again visiting with his wife in the prison visiting area. While plaintiff was having his picture taken, defendant Oleachea called plaintiff and his wife aside and told them that the visit was being terminated because plaintiff's wife was dressed inappropriately. Plaintiff asked if his wife could put on her sweater, but Oleachea said no. Plaintiff told Oleachea that he would not leave the visiting area without speaking with the sergeant, Oleachea's supervisor. Plaintiff walked back to his assigned visiting table and sat down. Oleachea instructed plaintiff's wife to stand by the stairs and then walked over to plaintiff. Oleachea pulled out his pepper spray and instructed the other visitors to move.

Defendant R. Sandoval, another CO, came to plaintiff's table and stood next to Oleachea. Sandoval reportedly told Oleachea "four times to put that away (his pepper spray) and . . . that we don't need that out here." Cmplt., ECF No. 1 at 7, ¶ 30. As plaintiff attempted to explain to Sandoval why he wanted to speak with the sergeant, defendant Oleachea "out of nowhere and

---

[1] References to page numbers reflect the court's electronic pagination, not the internal pagination of the complaint.

3

1   unprovoked, sprays plaintiff directly in the face while plaintiff sat in his seat." Id. at ¶ 32.
2   Plaintiff avers that he then "calmly gets up and walks in the opposite direction of defendant
3   Oleachea," but Oleachea "sprays a second burst of pepper spray into the back of plaintiff's head."
4   Id. at ¶¶ 33-4. Plaintiff then "changes directions, walking towards the right to get away," but
5   Oleachea "sprays plaintiff a third time to the right side of plaintiff's face and yells get down!" Id.
6   at ¶¶ 35-6. "As plaintiff was getting down, defendant Oleachea sprays plaintiff a fourth time."
7   Id. at ¶ 37. Plaintiff was then cuffed, taken to a holding cage, decontaminated and examined, then
8   returned to his cell.
9       Plaintiff's wife, then age 64, was "cordoned off in the visiting room control booth
10  suffering the effects of the pepper spray while the other civilian visitors were sent outside on the
11  patio to get fresh air." Id. at ¶ 40. Plaintiff's wife complained to CO Mirlohi that she had asthma
12  and was having trouble breathing. Mirlohi initially failed to respond, but then called for CO
13  Hammon to escort her to a bunker.
14      Plaintiff was issued an RVR (Log No. B-11-11-020) for "Refusing a Direct Order." See
15  ECF No. 1 at 39. Plaintiff was found guilty. Id. at 43. However, the hearing officer found that
16  the incident had not warranted issuance of an RVR, and reduced the matter to an administrative
17  CDC-128A Custodial Counseling Chrono. Plaintiff was counseled and reprimanded.
18      Plaintiff avers that he filed and exhausted a prison administrative grievance challenging
19  the conduct of defendant Oleachea on November 6, 2011. Id. at ¶ 52; see also ECF No. 1 at 2.
20  Plaintiff's exhibits include the statements of visitors to the prison that day who reported to
21  officials that Oleachea's response was unprovoked by plaintiff. See e.g. id. at 28. Plaintiff was
22  interviewed in March 2013 by a member of CDCR's Legal Affairs Office concerning the
23  November incident. Plaintiff was thereafter served with a subpoena to be a witness before the
24  State Personnel Board in proceedings against Oleachea, but "on the account of defendant
25  Oleachea accepting something with lesser consequences, plaintiff did not have to appear at the
26  hearing." Id. at ¶ 51.
27      Plaintiff alleges that he has been diagnosed him with chronic dry eye syndrome due to the
28  pepper spray incident. Plaintiff suffers from blurred vision, sensitivity to light, and persistent eye

4

irritation and pain, which require the use of artificial tears.  Plaintiff alleges that he suffers nightmares about being pepper sprayed, which cause him to have difficulty breathing.  Plaintiff states that he has been a mental health patient since 1994, is diagnosed with manic depression and major depression, and is prescribed mood stabilizers.

Plaintiff asserts federal constitutional claims of excessive force, retaliation, failure to protect, failure to investigate, and supervisory liability, and state law claims of assault and battery, negligence, intentional infliction of emotional distress, and supervisory liability.  Plaintiff seeks the expungement of his disciplinary conviction, compensatory and punitive damages, and such other relief as the court may find appropriate .

   C. Screening of Plaintiff's Complaint

     1. Excessive Force Claim Against Defendant Oleachea

Plaintiff alleges that defendant Oleachea's use of pepper spray against him was malicious and unnecessary to maintain order.  The statements of various witnesses to the incident support plaintiff's allegation that Oleachea's challenged conduct was unnecessary to control plaintiff.  These allegations state a cognizable claim against defendant Oleachea for use of excessive force in violation of the Eighth Amendment's proscription against cruel and usual punishment.[2]

     2. Failure to Protect Claim Against Defendant Sandoval

Plaintiff alleges that defendant Sandoval failed to prevent Oleachea's use of pepper spray against plaintiff, despite the opportunity to do so.  Pertinent allegations of the complaint include Sandoval's physical proximity to Oleachea and plaintiff, Sandoval's repeated statements to

---

[2] The follow legal standards apply to an excessive force claim.  "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not ... use excessive physical force against prisoners."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)).  "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).  When determining whether the force was excessive, we look to the "extent of the injury ..., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"  Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321).  While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  Hudson, at 9 (citing Whitley, at 327).

5

Oleachea to put the pepper spray away, and reported witness statements.³ These allegations state a cognizable claim against defendant Sandoval for his alleged failure to protect plaintiff in violation of the Eighth Amendment.⁴

### 3. No Cognizable Claim Against Defendant Lieber

The allegations of the complaint against defendant Lieber, then CSP-SAC Associate Warden, are limited to the following, ECF No. 1 at 6, ¶¶ 13-5:

> ¶ 13.  On 2/2/11 [sic], plaintiff wrote Associate Warden, defendant D. Lieber and requested that she intervene and investigate the false allegations against plaintiff made by defendant Oleachea.  (See Exhibit B.)
>
> ¶ 14.  Plaintiff never received any kind of response from defendant D. Lieber.
>
> ¶ 15.  Plaintiff also made defendant D. Lieber aware that plaintiff was aware that something in the future would happen again.  (See Exhibit B.)

Plaintiff's referenced Exhibit B includes three documents.  The first document is an undated copy of a letter plaintiff wrote to Lieber that:  (a) asserts the February 6, 2011 search of plaintiff was based on false allegations; (b) requests that the video of the incident be preserved; (c) expresses concern that the pending RVR hearing will be unfair; and (d) requests that Lieber

---

³ Plaintiff also alleges that "defendant Sandoval was deliberately indifferent when he violated the zero tolerance policy and promoted a 'code of silence' by choosing to protect defendant Oleachea and failed to immediately report the misuse of force that constituted the cruel and unusual punishment that violated plaintiff 's Eighth Amendment rights." ECF No. 1 at 11 ¶ 62.  In regard to these allegations, plaintiff references his Exhibit I, which includes a 2004 CDCR memorandum discouraging correctional staff from participating in a "code of silence." ECF No. 1 at 59.  Neither the contents of Exhibit I nor any other alleged facts support a separate failure to protect claim against defendant Sandoval based on his alleged deference to a "code of silence" when he failed to "immediately report" defendant Oleachea's obvious use of force.

⁴ A "failure to protect" claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety." Farmer, 511 U.S. at 837. Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted).  Under an Eighth Amendment failure to protect claim, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842 (citations omitted).  The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and wellbeing of the prisoner. Id. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

"look into these matters and intervene." The second document is an "Addendum" to that letter, dated February 28, 2011, addressed to Lieber and copied to other officials and prisoner civil rights attorneys. The addendum expresses plaintiff's concern that he may again be subject to a "false set up," and notes that, had the February 6, 2011 allegation been made in good faith, plaintiff would have been put on "potty watch," which he was not. These documents assert that defendant Oleachea (who operated the surveillance camera in the visiting room on February 6, 2011), and defendant Sergeant Hall (who supervised the visiting room and allegedly promoted an atmosphere of racial tension and discrimination (see n.5, *infra*)), lied when they asserted that the visiting room video supported their allegations against plaintiff.

The third document in plaintiff's Exhibit B is a November 7, 2011 letter addressed "To Whom It May Concern," written after the November 6, 2011 pepper spray incident, that recounts "the history [that] is between that officer (Oleachea ), my wife and myself."[5] See ECF No. 1 at

---

[5] In this third document, plaintiff recounted in part, ECF No. 1 at 24:

> I would like to add to what the history is between that officer (Oleachea), my wife and myself. This is not the officer[']s first time in disrupting my visit. The incident before this occurred when he was the security camera man and he said that he saw me take twenty dollars, write up is enclosed. Before that incident he wrote me up at Salinas Valley State Prison. He was a C/O there. He wrote me up on a sexual misconduct when I was having a visit with my wife, the visit was behind glass. Oleachea[']s prejudice stems from the fact that my wife once was a nurse at Salinas Valley in the mental health program Enhanced Out Patient.
>
> Oleachea[']s history there includes him in the Green Wall which began on D yard [].
>
> When my wife and I came here his harassment continued. My wife and I have been a target of racial discrimination as well as others. This discrimination is strongly practice by the visiting Sgt., Sgt. Hall. She promotes such behavior.
>
> Since coming off the last lockdown when the crips got into assaulting the c/o's, Sgt. Hall has radically pushed the envelope in causing tensions and discord in the visiting room. The lack of respect to our family members has been a major issue. They conduct themselves in communication when talking to our loved ones as if they were talking to prisoners.

7

21-4.

Only the first two documents appear to support plaintiff's putative "failure to investigate" claim. Specifically, plaintiff asked Lieber to "look into" the alleged false allegations against him concerning the February 6, 2011 search, and to "intervene" in the upcoming related RVR hearing. See ECF No. 1 at 22. Defendant Lieber's alleged failure to investigate is reflected in plaintiff's allegation that he "never received any kind of response from defendant D. Lieber." ECF No. 1 at 6, ¶ 14. However, a prisoner has no constitutional right to obtain an official investigation upon request. See e.g., Barkey v. Reinke, 2010 WL 3893897, at *13, 2010 U.S. Dist. LEXIS 104585, at *37-9 (D. Idaho Sept. 30, 2010) (Case No. 1:07-cv-471 S BLW) (collecting cases). Moreover, plaintiff sustained no harm by the alleged failure of Lieber to investigate or respond to plaintiff's letter and addendum, because plaintiff was found not guilty at the RVR hearing. Therefore, the complaint fails to state a failure to investigate claim.

The court has also considered whether these allegations, viewed more broadly, could support a failure to protect claim against defendant Lieber. Plaintiff expressed concern to Lieber that he may again be subject to a "false set up" by Oleachea and/or Hall. ECF No. 1 at 23. Thereafter, plaintiff alleges that defendant Oleachea improperly pepper sprayed him. Had plaintiff implored Lieber to protect him physically from Oleachea (rather than from false allegations), this sequence of events might support a failure to protect claim.[6] However, plaintiff's stated concerns to Lieber did not identify a significant risk to plaintiff's health or safety and thus there is no basis for finding that Lieber disregarded such risk. See Farmer, 511 U.S. at

---

> This has been a long time coming and the straw that broke the camel[']s back is when the officer [Oleachea] disregarded our loved ones in the visiting room and subjected them to the pepper spray.

[6] Prison officials, particularly those in administrative positions, may be "liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help." Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976); and Greeno v. Daley, 414 F.3d 645, 652-3 (7th Cir. 2005)). A correctional official, particularly one with supervisory authority, who is informed of an alleged constitutional violation (e.g. pursuant to reviewing an inmate's administrative appeal), may be responsible for remedying such violation. Jett at 1098.

837.  Therefore, plaintiff has identified no grounds for alleging a failure to protect claim against defendant Lieber.

For these reasons, the court finds that the complaint fails to state a cognizable claim against defendant Lieber, either for failure to investigate or failure to protect, and that these deficiencies cannot be cured by amendment.

### 4. Retaliation Claim Against Defendant Oleachea

Plaintiff summarily asserts a First Amendment retaliation claim against defendant Oleachea.  See ECF No. 1 at 4, 10.  None of the allegations of the complaint support a prima facie retaliation claim.  The November 7, 2011 "To Whom It May Concern" letter written by plaintiff recounts a history of animosity between plaintiff and Oleachea.  It is not unreasonable to infer, based on that letter, that Oleachea may have used pepper spray against plaintiff, in the presence of his wife and other visitors, as an expression of such animosity and in retaliation for plaintiff remaining seated in the visiting room in defiance of Oleachea's instructions.  However, this inference does not support a First Amendment retaliation claim because plaintiff's decision to remain seated was not constitutionally protected conduct.

Nevertheless, plaintiff may be able to state a cognizable retaliation claim against Oleachea if he can plausibly allege that Oleachea pepper sprayed him in retaliation for plaintiff's exercise of his First Amendment rights, e.g., because plaintiff expressed his concerns about Oleachea to Associate Warden Lieber, or because plaintiff pursued an earlier administrative grievance against Oleachea.  Although the current complaint does not directly support these theories, plaintiff is advised of the standards for stating a First Amendment retaliation claim should he believe he can plausibly do so in an amended complaint.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (fn. and citations omitted).  At the pleading stage, the "chilling" requirement is met if the "official's acts would

chill or silence a person of ordinary firmness from future First Amendment activities.'" Id. at 568, quoting Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999). However, direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Rhodes, at 568 n.11. "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a retaliatory adverse action. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009), citing Rhodes, 408 F.3d at 568, n.11.

Plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right. Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531 (transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). Rather, the interest asserted in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive. Filing administrative grievances and initiating litigation are protected activities, and it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes, 408 F.3d at 567-68.

### 5.     Failure to Supervise Claim Against Defendants Hall and Virga

Plaintiff asserts claims based on a "failure to supervise" theory against defendant Sergeant Hall and defendant CSP-SAC Warden Virga. Plaintiff alleges against defendant Hall, ECF No. 1 at 11:

> ¶ 63. The failure of defendant Hall to adequately supervise her subordinate[s], led to the actions of defendant Oleachea violating plaintiff's Eighth Amendment rights . . . .
>
> ¶ 65. Resulted in defendant Oleachea making false allegations that defendant Hall authorized him to swap assigned positions when in fact defendant Hall did not authorize him to switch position[s], and that leading to plaintiff's constitutional rights being violated, constitutes her [Hall's] deliberate indifference to plaintiff's personal safety.

10

1    Plaintiff's exhibits include two relevant form reports, each entitled "Clarification of

2 Report," prepared respectively by defendant Oleachea and defendant Hall.  The "Clarification of

3 Report" prepared by defendant Oleachea, dated November 11, 2011, states in pertinent part, ECF

4 No. 1 at 63:

5    On Saturday, November 5, 2011, I was assigned B Visit Control, when Lieutenant Detlefson redirected me to cover a position in
6    visitor processing.  During that shift, Visiting Sergeant Hall was informing me about possible areas inside B Visiting to watch and
7    be observant of, to prevent contraband from entering the institution. I said that if Officer Stokes, who is assigned to B Visit Floor,
8    doesn't show up for work on Sunday (11/06/2011), I would switch out with the non-regular officer for the day.  (Sergeant Hall said
9    OK.)

10   On Sunday, November 6, 2011, I was assigned B Visit Control and Officer Stokes' position (B Visit Floor) was being covered by a
11   non-regular officer, Officer Mirlohi.  I switched positions and covered the B Visit Floor position.  I did not inform the Visiting
12   Sergeant or Lieutenant.  I had come to the conclusion that it was OK to switch out that day based on the conversation the day prior.
13

14 The "Clarification of Report" prepared by Hall, dated November 13, 2011, states in full, ECF No.

15 1 at 29, 67 (duplicate):

16   I did not authorize Officer D. Oleachea and Officer S. Mirlohi to exchange positions on November 6, 2011.
17

18    Plaintiff's "failure to supervise" allegation against defendant Virga provides in full, ECF

19 No. 1 at 11:

20   ¶ 66.  The failure of defendant Tim Virga to establish written policy regarding the use of force (with chemical agent) in the visiting
21   room established his failure to train and supervise, constituting his deliberate indifference to plaintiff's personal safety.
22

23    Liability may not be imposed on a supervisor under a theory of respondeat superior,

24 because every defendant is liable only for his or her own misconduct.  Iqbal, 556 U.S. at 676-77;

25 Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009).  Supervisors may be held liable

26 only if they "participated in or directed the violations, or knew of the violations and failed to act

27 to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652

28 F.3d 1202, 1205–08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009);

11

1  Preschooler II v. Clark County, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126
2  F.3d 1189, 1204 (9th Cir. 1997).

3  "A supervisor may be liable if there exists either (1) his or her personal involvement in the
4  constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful
5  conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)
6  (citation omitted). Further, "[s]upervisory liability exists even without overt personal
7  participation in the offensive act if supervisory officials implement a policy so deficient that the
8  policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the
9  constitutional violation.'" Id. (quoting Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987)).

10  Plaintiff's allegations against defendant Hall, together with the factual conflict in the
11  record (Hall and Oleachea provide conflicting accounts whether Oleachea had Hall's permission
12  to work in the visiting room on November 6, 2011), are sufficient to infer a possible "sufficient
13  causal connection" between Hall's supervisory decisions and Oleachea's use of excessive force
14  against plaintiff, that is, Hall's alleged failure to protect plaintiff. Although the existing
15  information raises more questions than it resolves – e.g., was Hall aware of Oleachea's alleged
16  animosity toward plaintiff? did Oleachea engage is prior incidents of excessive force against
17  prisoners of which Hall was aware? – these matters can be developed through discovery.

18  However, plaintiff's allegations against defendant Virga are insufficient to state a
19  cognizable claim. Contrary to plaintiff's allegation, CDCR has written policies concerning the
20  use of chemical agents in prisons. Even a cursory review of CDCR's Department Operations
21  Manual (DOM) demonstrates that correctional officers must obtain training on the appropriate
22  use of chemical agents. See e.g., DOM §§ 32010.12, 32010.14.2, 32010.14.4, 32010.19.4.
23  Employing a chemical agent is considered a "use of force" subject to well-articulated standards.
24  See DOM § 51020.5 ("Use of Force Options"). Further, no allegations of the complaint or any
25  evidence included in the supporting exhibits support an inference that Warden Virga failed to
26  "train and supervise" CSP-SAC officers, particularly defendant Oleachea, or that Virga had any
27  knowledge of a significant risk to plaintiff's health or safety, or knew that defendant Oleachea
28  may have had a propensity to use excessive force. Therefore, the complaint fails to allege facts

12

sufficient to state a supervisory liability claim against defendant Virga for "deliberate indifference to plaintiff's personal safety."

In conclusion, the court finds that the complaint states a potentially cognizable claim against defendant Hall for supervisory liability premised on the alleged failure to protect plaintiff from excessive force. However, the complaint does not state a cognizable claim against defendant Virga.

### 6. Summary of Cognizable Federal Claims

For the reasons set forth above, the court finds that plaintiff's complaint states a cognizable claim against defendant Oleachea for use of excessive force; a cognizable claim against defendant Sandoval for failure to protect; and a cognizable claim against defendant Hall for supervisory liability premised on his alleged failure to protect plaintiff from defendant Oleachea's use of excessive force. The complaint does not state a retaliation claim against defendant Oleachea; however, plaintiff will be granted leave to file an amended complaint in which he can attempt to state such a claim. Finally, the complaint does not state a cognizable claim against defendants Lieber or Virga, and amendment of the complaint would not cure these deficiencies. Therefore, defendants Lieber and Virga will be dismissed from this action.

### 7. State Law Claims

The complaint also asserts state law claims for assault and battery, negligence, intentional infliction of emotional distress, and supervisory liability. The court does not at this time assess whether these claims are cognizable but will permit them to proceed in the instant complaint or in an amended complaint in which they are included. Should this case proceed to summary judgment or trial, the court will then determine whether to exercise supplemental jurisdiction over plaintiff's state law claims. See 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction).

## II. Option to Proceed on Original Complaint or File a First Amended Complaint

For the reasons set forth above, plaintiff may proceed on his original complaint against defendants Oleachea, Sandoval and Hall, **OR** he may file an amended complaint wherein he

1  maintains his cognizable claims against these defendants and attempts to add a retaliation claim
2  against Oleachea.

3  Plaintiff will be required to inform the court of his choice by completing and filing the
4  attached Notice of Election within thirty (30) days after service of this order.  If plaintiff chooses
5  to proceed on his original complaint, the court will direct the Clerk of Court to prepare and issue
6  three summonses, and direct plaintiff, who paid the filing fee, to serve process on defendants
7  Oleachea, Sandoval and Hall in accordance with Federal Rule of Civil Procedure 4.  On the other
8  hand, if plaintiff chooses to file an amended complaint, he shall file a First Amended Complaint
9  (FAC) together with his Notice of Election.

10  Plaintiff is not obligated to file a FAC.  However, if plaintiff chooses to file a FAC, it
11  must allege in specific terms how each named defendant violated plaintiff's constitutional rights.
12  Rizzo, supra, 423 U.S. at 371; see also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) ("The
13  inquiry into causation must be individualized and focus on the duties and responsibilities of each
14  individual defendant whose acts or omissions are alleged to have caused a constitutional
15  deprivation."); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978) ("A person 'subjects' another
16  to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative
17  act, participates in another's affirmative acts or omits to perform an act which he is legally
18  required to do that causes the deprivation of which complaint is made.").  Vague and conclusory
19  allegations of official participation in civil rights violations are not sufficient.  Ivey v. Board of
20  Regents, 673 F.2d 266, 268 (9th Cir. 1982).  A FAC will supersede the original complaint and
21  must therefore be complete in itself without reference to the original complaint.  See Local Rule
22  220; Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).

23  III. Motion for Appointment of Counsel

24  Plaintiff requests appointment of counsel.  See ECF No. 3.  Plaintiff avers that he cannot
25  afford to hire an attorney; that his incarceration is "on a 180 Level 4 High Security prison [which]
26  greatly limit[s] his ability to litigate this case," which "will likely involve substantially a large
27  amount of investigation and discovery of personal files;" a lawyer would be helpful because this
28  case is "complex and will involve a code of silence allegation against state officials;" trial "will

1 involve conflicting testimony and credibility issues;" and "plaintiff is a patient of the mental
2 health system and this case will likely overwhelm plaintiff." Id. at 1-2.

3 Plaintiff is informed that this court has no authority to require an attorney to represent an
4 indigent prisoner in a civil rights action. Mallard v. United States Dist. Court, 490 U.S. 296, 298
5 (1989). Only in certain exceptional circumstances may a district court request the voluntary
6 assistance of a willing attorney. See 28 U.S.C. § 1915(e)(1); Terrell v. Brewer, 935 F.2d 1015,
7 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990). The test
8 for exceptional circumstances requires the court to evaluate the plaintiff's likelihood of success
9 on the merits and the ability of the plaintiff to articulate his claims pro se in light of the
10 complexity of the legal issues involved. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th
11 Cir. 1986); Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983). Circumstances common to
12 most prisoners, such as lack of legal education and limited law library access, do not establish
13 exceptional circumstances that would warrant a request for voluntary assistance of counsel.
14 Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009). Finally, and significantly, only a limited
15 number of attorneys are available for voluntary appointment.

16 The reasons asserted by plaintiff in support of his request for appointment of counsel
17 reflect circumstances common to most prisoners and address matters (e.g. trial) that are not
18 pertinent at this stage of the litigation. Moreover, plaintiff has demonstrated his capacity to
19 identify and articulate his claims pro se, based on the court's finding that his original complaint
20 states cognizable legal claims against three defendants. For these reasons, the court finds that
21 plaintiff has not met his burden of demonstrating exceptional circumstances warranting the
22 appointment of counsel at this time. Accordingly, plaintiff's request will be denied without
23 prejudice.

24     IV.    Conclusion
25 For the foregoing reasons, IT IS HEREBY ORDERED that:
26 1. Plaintiff's motion for appointment of counsel, ECF No. 3, is denied without prejudice.
27 2. Defendants Lieber and Virga are dismissed from this action without prejudice.
28 3. Plaintiff shall, within thirty (30) days after service of this order, complete and file the

1  attached Notice of Election, informing the court whether plaintiff chooses to proceed on his
2  original complaint against defendants Oleachea, Sandoval and Hall, OR elects to proceed on a
3  proposed First Amended Complaint, submitted together with the Notice of Election.  If plaintiff
4  elects to proceed on a newly submitted First Amended Complaint, the court will screen the new
5  complaint pursuant to 28 U.S.C. § 1915A.
6      4.  Should plaintiff fail to timely comply with this order, this action will be dismissed
7  without prejudice.
8  DATED: June 29, 2016

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL DIXON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>D. OLEACHEA, et al.,<br><br>　　　　Defendants. | No.  2:15-cv-2372 KJM AC P<br><br><br>NOTICE OF ELECTION |

　　Plaintiff elects to:

\_\_\_\_\_　　　Proceed on his original complaint file-endorsed November 16, 2015.

<u>OR</u>

\_\_\_\_\_　　　Proceed on his proposed First Amended Complaint submitted herewith.

_____　　_____
Date　　　　　　　　　　　　　　　　　　　　　　　　Plaintiff