UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL DIXON, | No. 2:15-cv-2372 KJM AC P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| D. OLEACHEA, et al., | |
| Defendants. | |

I.     Introduction

Plaintiff is a state prisoner currently incarcerated at California State Prison Corcoran (CSP-COR) under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds pro se and in forma pauperis with a First Amended Complaint (FAC) filed pursuant to 42 U.S.C. § 1983. See ECF No. 9. The FAC challenges conditions of plaintiff's prior incarceration at California State Prison Sacramento (CSP-SAC). This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c).

On screening pursuant to 28 U.S.C. § 1915A, this court found that the FAC states an Eighth Amendment claim for excessive force and First Amendment retaliation claim against defendant Oleachea; Eighth Amendment failure-to-protect claims against defendants Sandoval and Hall; and state law claims for assault and battery, intentional infliction of emotional distress,

negligence and supervisory liability. See ECF No. 12. Defendant Sandoval was subsequently dismissed from this action without prejudice because attempts by the United States Marshal to serve process on him were unsuccessful. See ECF Nos. 41, 45.

Currently pending are separate motions to dismiss this action filed by defendants Hall and Oleachea. Defendant Hall filed the first motion to dismiss. See ECF No. 27. Plaintiff timely filed an opposition. See ECF No. 33. Defendant Oleachea subsequently filed a motion to dismiss. See ECF No. 37. The court extended time for plaintiff to file an opposition to Oleachea's motion, and provided plaintiff the option of filing a superseding opposition to the motion filed by defendant Hall. See ECF Nos. 42, 44. Plaintiff did not file a further opposition. Nevertheless, because defendants' motions to dismiss are virtually identical, the court finds plaintiff's opposition applicable to both motions.[1]

For the reasons set forth below, the undersigned recommends that defendants' motions to dismiss be granted in part, specifically, that the court dismiss plaintiff's federal claims against defendants in their official capacities and plaintiff's state law claims, and that this action proceed on plaintiff's federal claims against defendants in their individual capacities.

II. Allegations and Claims of the First Amended Complaint

District courts are required to preliminarily screen all prisoner civil rights complaints. See 28 U.S.C. § 1915A(a). Pursuant to that statute, the undersigned previously summarized the factual allegations of plaintiff's FAC as follows:

> Plaintiff's allegations focus on the challenged conduct of defendant D. Oleachea, a CSP-SAC correctional officer (CO). On February 6, 2011, plaintiff was visiting with his wife in the prison visiting area. After about 45 minutes, plaintiff was called to the podium and directed to the strip out area, where he was searched. The search was triggered by a report from defendant Oleachea, who was operating the surveillance camera that scanned the visiting room, that plaintiff appeared to take and/or hold a $20 bill in his hand. The search of plaintiff failed to reveal any money or other contraband. Nevertheless, plaintiff's visit was terminated and he was issued a Rules Violation Report (RVR) (Log No. B-11-02-013), alleging "Possession of Contraband (Money)." See ECF No. 1 at 16. Plaintiff wrote a letter of complaint to defendant D. Lieber ("the Chief

---

[1] As a result, the court finds no basis for construing plaintiff's failure to respond directly to defendant Oleachea's motion as a waiver of opposition thereto. Cf. Local Rule 230(l).

2

Disciplinary Officer and Associate Warden in charge of reviewing all administrative appeals," see Complaint (Cmplt.), ECF No. 1 at 2, ¶ 4), who allegedly never responded. Plaintiff was found "Not Guilty" at the subsequent disciplinary hearing held March 7, 2011.

Thereafter, on November 6, 2011, plaintiff was again visiting with his wife in the prison visiting area. While plaintiff was having his picture taken, defendant Oleachea called plaintiff and his wife aside and told them that the visit was being terminated because plaintiff's wife was dressed inappropriately. Plaintiff asked if his wife could put on her sweater, but Oleachea said no. Plaintiff told Oleachea that he would not leave the visiting area without speaking with the sergeant, Oleachea's supervisor. Plaintiff walked back to his assigned visiting table and sat down. Oleachea instructed plaintiff's wife to stand by the stairs and then walked over to plaintiff. Oleachea pulled out his pepper spray and instructed the other visitors to move.

Defendant R. Sandoval, another CO, came to plaintiff's table and stood next to Oleachea. Sandoval reportedly told Oleachea "four times to put that away (his pepper spray) and . . . that we don't need that out here." Cmplt., ECF No. 1 at 7, ¶ 30. As plaintiff attempted to explain to Sandoval why he wanted to speak with the sergeant, defendant Oleachea "out of nowhere and unprovoked, sprays plaintiff directly in the face while plaintiff sat in his seat." Id. at ¶ 32. Plaintiff avers that he then "calmly gets up and walks in the opposite direction of defendant Oleachea," but Oleachea "sprays a second burst of pepper spray into the back of plaintiff's head." Id. at ¶¶ 33-4. Plaintiff then "changes directions, walking towards the right to get away," but Oleachea "sprays plaintiff a third time to the right side of plaintiff's face and yells get down!" Id. at ¶¶ 35-6. "As plaintiff was getting down, defendant Oleachea sprays plaintiff a fourth time." Id. at ¶ 37. Plaintiff was then cuffed, taken to a holding cage, decontaminated and examined, then returned to his cell.

Plaintiff's wife, then age 64, was "cordoned off in the visiting room control booth suffering the effects of the pepper spray while the other civilian visitors were sent outside on the patio to get fresh air." Id. at ¶ 40. Plaintiff's wife complained to CO Mirlohi that she had asthma and was having trouble breathing. Mirlohi initially failed to respond, but then called for CO Hammon to escort her to a bunker.

Plaintiff was issued an RVR (Log No. B-11-11-020) for "Refusing a Direct Order." See ECF No. 1 at 39. Plaintiff was found guilty. Id. at 43. However, the hearing officer found that the incident had not warranted issuance of an RVR, and reduced the matter to an administrative CDC-128A Custodial Counseling Chrono. Plaintiff was counseled and reprimanded.

Plaintiff avers that he filed and exhausted a prison administrative grievance challenging the conduct of defendant Oleachea on November 6, 2011. Id. at ¶ 52; see also ECF No. 1 at 2. Plaintiff's exhibits include the statements of visitors to the prison that day who reported to officials that Oleachea's response was unprovoked by plaintiff. See e.g. id. at 28. Plaintiff was interviewed in March 2013 by a member of CDCR's Legal Affairs Office concerning the

3

> November incident. Plaintiff was thereafter served with a subpoena to be a witness before the State Personnel Board in proceedings against Oleachea, but "on the account of defendant Oleachea accepting something with lesser consequences, plaintiff did not have to appear at the hearing." Id. at ¶ 51.
>
> Plaintiff alleges that he has been diagnosed him with chronic dry eye syndrome due to the pepper spray incident. Plaintiff suffers from blurred vision, sensitivity to light, and persistent eye irritation and pain, which require the use of artificial tears. Plaintiff alleges that he suffers nightmares about being pepper sprayed, which cause him to have difficulty breathing. Plaintiff states that he has been a mental health patient since 1994, is diagnosed with manic depression and major depression, and is prescribed mood stabilizers.

ECF No. 12 at 2-4 (quoting ECF No. 8 at 3-5) (fn. omitted)

The court found these allegations sufficient to support the following cognizable federal legal claims under Section 1983: (1) an Eighth Amendment claim for excessive force against defendant Oleachea; (2) a First Amendment retaliation claim against defendant Oleachea, and (3) Eighth Amendment failure-to-protect claims against defendants Sandoval and Hall. ECF No. 12 at 4. The court also found that the FAC stated cognizable state law claims against defendant Oleachea for assault and battery, and for intentional infliction of emotional distress; against defendants Sandoval and Hall for negligence; and against CDCR for supervisory liability under California Government Code section 815.2(a). See id. at 4-6. As earlier noted, Sandoval was subsequently dismissed from this action. ECF Nos. 41, 45.

III.     Motions to Dismiss Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure

Defendants Hall and Oleachea each move to dismiss the official capacity claims against them as barred by the Eleventh Amendment. They further contend that plaintiff's state law claims are barred by plaintiff's failure to comply with the California Government Claims Act.

A.     Legal Standards Governing Motion to Dismiss

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. North Star Intern. v. Arizona Corp. Com'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In order to survive dismissal for failure to state a claim, a

complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, (1992)). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). However, the court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

////

////

B.     Federal Claims Under 42 U.S.C. § 1983

Defendants Hall and Oleachea contend that plaintiff's claims for damages against them in their official capacities are barred by the Eleventh Amendment. See ECF No. 27-1 at 3-4; ECF No. 37-1 at 4-5. In opposition, plaintiff concedes that he may not pursue damages claims against defendants in their official capacities and, though prospective injunctive relief against defendants in their official capacities was previously available, any such claim was rendered moot by plaintiff's transfer from CSP-SAC. See ECF No. 33 at 1-2. Plaintiff maintains, however, that his transfer "does not diminish or abrogate Plaintiff's claims" against defendants in their "individual capacity." Id. at 2. Indeed, the FAC clearly presents claims against defendants in both their official and individual capacities. See ECF No. 9, ¶4.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (citation omitted); see also Hafer v. Melo, 502 U.S. 21, 25 (1991). Therefore, state officials, like states, are entitled to Eleventh Amendment immunity from damages suits for conduct in their official capacities. See Atascadero State Hospital v. Scanlon, 473 U.S. 234, 237–38 (1985). In contrast, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." Hartmann v. California Department of Corrections and Rehabilitation, 707 F.3d 1114, 1127 (9th Cir. 2013) (citing Hafer, 502 U.S. at 25; Kentucky v. Graham, 473 U.S. 159, 166 (1985); and Los Angeles County v. Humphries, 562 U.S. 29, 36-7 (2010)).

Pursuant to this authority, the undersigned recommends that plaintiff's federal official capacity claims against defendants Hall and Oleachea be dismissed pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. The action should proceed against these defendants in their individual capacities on plaintiff's federal damages claims under Section 1983.

////

6

C.      State Law Claims and the California Government Claims Act

Defendants Hall and Oleachea argue that plaintiff's state law claims should be dismissed because plaintiff failed to fully comply with the requirements of California's Government Claims Act. Specifically, they contend that plaintiff failed to timely file suit after the rejection of his timely submitted state tort claim. See ECF No. 27-1 at 4-5; ECF No. 37-1 at 3-4. Plaintiff does not address this contention in his opposition. See generally ECF No. 33.

Plaintiff's state law claims are governed by the requirements of California law, which requires compliance with the California Government Claims Act (CGCA or Claims Act). "Before a person can sue a [California] public entity or public employee for money damages for actions taken within the scope of the person's employment, he or she must first file a government claim pursuant to the CGCA, codified at California Government Code section 810 et seq." Robinson v. Alameda County, 875 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012) (citations omitted); see also Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988) (claim presentation requirement of the California statute applies to state law claims brought in federal court).

Under the Claims Act, a claim alleging a cause of action for personal injury must be presented to the public entity no later than six months after the accrual of the cause of action. Cal. Gov. Code § 911.2(a). If the public entity provides written notice rejecting the claim, the claimant has six months thereafter to initiate a lawsuit. Id., § 945.6(a)(1). If the public entity fails to provide written notice, the claimant has two years from the accrual of the cause of action to initiate suit. Id., § 945.6(a)(2). "[T]he filing of a [state tort] claim for damages is more than a procedural requirement, it is a condition precedent to plaintiff's maintaining an action against defendant, in short, an integral part of plaintiff's cause of action." Williams v. Horvath, 16 Cal.3d 834, 842 (1976) (citations and internal quotation marks omitted). "[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." State of California v. Superior Court (Bodde), 32 Cal. 4th 1234, 1239 (2004).

Because "compliance with the claim presentation requirement is an element of a cause of action against a public entity," plaintiff's failure "to allege facts demonstrating or excusing

7

1  compliance with the requirement subjects a complaint to general demurrer for failure to state a
2  cause of action." Id. at 1240-41 (citations and internal quotation marks omitted). "[T]he purpose
3  of these statutes is to provide the public entity sufficient information to enable it to adequately
4  investigate claims and to settle them, if appropriate, without the expense of litigation." City of
5  San Jose v. Superior Court, 12 Cal. 3d 447, 455 (1974) (citations omitted). The requirements of

In the present case, plaintiff did not allege in his original complaint or the FAC that he complied with California's claim presentation requirements; nor did he attach a copy of his claim or the response. See generally ECF Nos. 1, 9. Defendant Hall has now submitted copies of these documents, for which he requests judicial notice. See ECF No. 27-2 at 1-15. Defendant Oleachea joins in Hall's request. See ECF No. 37-2 at 1-15. The court has reviewed these records from the Department of General Services Government Claims Program, found them to be properly verified, and grants defendants' requests for judicial notice.[2]

Plaintiff's causes of action arising from the pepper-spray incident accrued on November 6, 2011, the date of the incident. The documents submitted by defendants demonstrate that plaintiff submitted a government tort claim (Claim No. G602889) alleging he sustained "left eye injury" in the "CSP-Sacramento visiting area" due to "harassment/retaliation/excessive force used." Plaintiff sought compensatory and punitive damages from individuals including the defendants named in this action. The claim was stamped "received" on March 5, 2012. See ECF No. 27-2 at 5-6, 12-3; ECF No. 37-2 at 5-6, 12-3. Because plaintiff submitted his government tort claim within six months after the accrual of his cause of action, it was timely submitted under the Claims Act. Cal. Gov. Code § 911.2(a).

Plaintiff was informed by letter dated April 27, 2012 that the Claims Board rejected his claim at its hearing on April 19, 2012. See ECF No. 27-2 at 15; ECF No. 37-2 at 15. The letter also informed plaintiff that, "[s]ubject to certain limited exceptions, you have only six months from the date this was notice was personally delivered or deposited in the mail to file a court

---

[2] This court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201; see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

action on this claim. See Government Code section 945.6." Id. Plaintiff commenced the instant action more than three years later, when he filed his complaint on November 9, 2015.³

Plaintiff's failure to allege compliance with the claim presentation requirement is a technical pleading defect that could be cured by amendment. Plaintiff did in fact submit a claim under the CGCA, and therefore could truthfully allege compliance. However, amendment to allege this essential element of plaintiff's causes of action would be futile. The CGCA's limitations period – six months, following rejection of the tort claim – applies to the state law claims asserted in the federal complaint. See Darulis v. Garate, 401 F.3d 1060, 1063 (9th Cir. 2005) (affirming dismissal under Rule 12(b)(6) for untimeliness under Cal. Gov. Code § 945.6); May v. Enomoto, 633 F.2d 164, 166 n.2, 167 (9th Cir. 1980) (six-month statute of limitations under the California Tort Claims Act applies to suits brought by prisoners). Because plaintiff commenced this action more than six months after the rejection of his state tort claim, his state law claims are barred.⁴ See Bodde, 32 Cal. 4th at 1239; Darulis, 401 F.3d at 1063.

Because plaintiff's state law claims are time-barred, they must be dismissed. Because leave to amend would be futile, it should not be granted. Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

IV. Conclusion

For the reasons explained above, IT IS HEREBY RECOMMENDED that:

1. The motions to dismiss filed by defendants Hall and Oleachea, ECF Nos. 27 & 37, be granted in part;

2. Plaintiff's official capacity claims under 42 U.S.C. § 1983 and plaintiff's state law claims against defendants Hall and Oleachea be dismissed pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted;

---

³ This filing date reflects application of the "prison mailbox rule" pursuant to which a document is deemed served or filed on the date a prisoner signs the document and gives it to prison officials for mailing. See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by incarcerated inmates).

⁴ In light of this finding, the court need not reach defendant Hall's further contention that plaintiff's state tort claim failed to fairly reflect his negligence claim against Hall. See ECF No. 27-1 at 5-6.

9

|   |   |
|---|---|
| 1 | 3. This action proceed on plaintiff's individual capacity damages claims against |
| 2 | defendants Hall and Oleachea under 42 U.S.C. § 1983, specifically, plaintiff's Eighth |
| 3 | Amendment claim for excessive force and First Amendment retaliation claim against defendant |
| 4 | Oleachea, and plaintiff's Eighth Amendment failure-to-protect claim against defendant Hall. |

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 6, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE