1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NATHANIEL DIXON,                        No.  2:15-cv-2372 KJM AC P

12              Plaintiff,

13        v.

14   DAVID OLEACHEA, et al.,                 FINDINGS AND RECOMMENDATIONS

15              Defendants.

16

17

18        **I.    Introduction**

19        Plaintiff Nathaniel Dixon is a state prisoner challenging the conditions of his prior

20   confinement at California State Prison Sacramento (CSP-SAC) under 42 U.S.C. § 1983.  This

21   action proceeds on plaintiff's First Amended Complaint, on his excessive force and retaliation

22   claims against defendant Correctional Officer D. Oleachea and his failure-to-protect claim against

23   defendant Correctional Officer J. Hall.  See ECF No. 9.

24        Each party now seeks summary judgment.  See ECF No. 75 (plaintiff's motion for

25   summary judgment); ECF No. 82 (defendant Hall's motion for summary judgment); ECF No. 89

26   (defendant Oleachea's motion for summary judgment).[1]  Defendants' respective motions are

27   _____

28   [1]  See also ECF No. 84 (defendant Hall's opposition); ECF No. 92 (defendant Oleachea's
     opposition); ECF Nos. 93, 95 (plaintiff's oppositions); ECF No. 96 (Hall's reply); ECF No. 98

                                           1

1   based on plaintiff's alleged failure to exhaust his administrative remedies, as well as the

2   substantive merits of plaintiff's claims and defendants' assertions of qualified immunity.

3   Plaintiff's motion anticipates defendants' failure-to-exhaust arguments, and also seeks summary

4   judgment on the merits of his substantive claims.  To the extent that plaintiff's motion addresses

5   the issue of exhaustion, which is an affirmative defense and not a basis for judgment in plaintiff's

6   favor, his arguments are considered here only in the context of defendants' motions.

7        These matters are referred to the undersigned United States Magistrate Judge pursuant to

8   28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c).  For the reasons explained below, the

9   undersigned recommends that plaintiff's motion for summary judgment be denied, defendant

10   Hall's motion be granted, and defendant Oleachea's motion be granted in part and denied in part.

11       **II.      <u>Background</u>**

12        In the First Amended Complaint (FAC), ECF No. 9, plaintiff alleges that Correctional

13   Officer Oleachea used excessive force against him when he repeatedly pepper-sprayed plaintiff

14   on November 6, 2011, while plaintiff was visiting his wife in the B-Facility visiting room at CSP-

15   SAC.  Plaintiff further alleges that Oleachea's conduct was in retaliation for plaintiff reporting to

16   the Associate Warden in February 2011 that Oleachea had falsely accused plaintiff of possessing

17   contraband during a previous visit with his wife.  Plaintiff also alleges that Correctional Officer J.

18   Hall, a supervisor, failed to protect plaintiff from this incident because Oleachea had switched

19   positions with another officer to work in the visiting room without Hall's knowledge or

20   authorization.

21        Plaintiff timely submitted a staff complaint against Oleachea which was partially granted

22   on First Level Review (FLR) and referred to the Office of Internal Affairs (OIA) for a possible

23   investigation.  Plaintiff requested Second Level Review (SLR), in which he added the names of

24   several additional officers, including Hall.  The SLR decision addressed only plaintiff's claims

25   against Oleachea; it partially granted the appeal and noted that an investigation was being

26   _____

27   (Oleachea's reply); and ECF No. 94 (plaintiff's motion for limited discovery, which the court has
    construed as an authorized surreply responsive to defendants' arguments in support of qualified

28   immunity).  Defendants' numerous objections to the format and content of plaintiff's filings are
    overruled.

1   conducted by the OIA.  Plaintiff requested Third Level Review (TLR), in which he added a claim

2   for monetary compensation against all named officers.  The appeal was twice rejected on

3   procedural grounds and plaintiff stopped pursuing it.  Plaintiff learned in March 2013 that the

4   OIA investigation of Oleachea had been completed.  Plaintiff commenced the instant federal civil

5   rights action in November 2015.

6           **III.    Legal Standards for Summary Judgment**

7           Summary judgment is appropriate when the moving party "shows that there is no genuine

8   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

9   Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

10  proving the absence of a genuine issue of material fact."  Nursing Home Pension Fund, Local 144

11  v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010)

12  (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish

13  this by "citing to particular parts of materials in the record, including depositions, documents,

14  electronically stored information, affidavits or declarations, stipulations (including those made for

15  purposes of the motion only), admission, interrogatory answers, or other materials" or by showing

16  that such materials "do not establish the absence or presence of a genuine dispute, or that the

17  adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56

18  (c)(1)(A), (B).

19          When the non-moving party bears the burden of proof at trial, "the moving party need

20  only prove that there is an absence of evidence to support the nonmoving party's case." Oracle

21  Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

22  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

23  against a party who fails to make a showing sufficient to establish the existence of an element

24  essential to that party's case, and on which that party will bear the burden of proof at trial. See

25  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

26  nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a

27  circumstance, summary judgment should be granted, "so long as whatever is before the district

28  court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

3

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  Moreover, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence."  Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[2]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

---

[2]  In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

4

1  Matsushita, 475 U.S. at 587 (citations omitted).

2  In evaluating the evidence to determine whether there is a genuine issue of fact," the court

3  draws "all reasonable inferences supported by the evidence in favor of the non-moving party."

4  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam).

5  It is the opposing party's obligation to produce a factual predicate from which the inference may

6  be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

7  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

8  party "must do more than simply show that there is some metaphysical doubt as to the material

9  facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the

10  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

11  omitted).

12  In applying these rules, district courts must "construe liberally motion papers and

13  pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."

14  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  However, "[if] a party fails to properly

15  support an assertion of fact or fails to properly address another party's assertion of fact, as

16  required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion

17  . . . ."  Fed. R. Civ. P. 56(e)(2).

18  **IV.** **Defendant Oleachea's Motion for Summary Judgment (ECF No. 89)**

19  **A.** **Failure to Exhaust Administrative Remedies**

20  Oleachea contends that plaintiff's claims are barred by his failure to exhaust his

21  administrative remedies before filing suit.  Plaintiff contends that he was not required to exhaust

22  his only relevant inmate appeal through CDCR's third and final level of administrative review

23  because he obtained all available administrative relief on second level review when he was

24  notified that the appeal, a staff complaint, was being investigated by the Office of Internal

25  Affairs.

26  **1.** **The Administrative Exhaustion Requirement**

27  "The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust

28  'such administrative remedies as are available' before bringing suit to challenge prison

1  conditions." Ross v. Blake, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)).

2  Exhaustion is mandatory provided remedies remain available. Id. at 1856 (citing Woodford v.

3  Ngo, 548 U.S. 81, 85 (2006), and Jones v. Bock, 549 U.S. 199, 211 (2007)). This requirement is

4  based on the policy goal that prison officials have "an opportunity to resolve disputes concerning

5  the exercise of their responsibilities before being haled into court." Jones, 549 U.S. at 204.

6      "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper

7  exhaustion." Jones at 218. Prisoners must adhere to the prison's "deadlines and other critical

8  procedural rules" in pursuing their grievances. Ngo, 548 U.S. at 90. However, "an inmate is

9  required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain

10  'some relief for the action complained of.'" Ross, 136 S. Ct. at 1859 (quoting Booth v. Churner,

11  532 U.S. 731, 738 (2001)). "The obligation to exhaust 'available' remedies persists as long as

12  *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . .

13  available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d

14  926, 935 (9th Cir. 2005) (original emphasis) (citing Booth at 736, 738).

15      The Supreme Court has made clear that there are only "three kinds of circumstances in

16  which an administrative remedy, although officially on the books, is not capable of use to obtain

17  relief." Ross, 136 S. Ct. at 1859. These circumstances exist when: (1) the "administrative

18  procedure . . . operates as a simple dead end – with officers unable or consistently unwilling to

19  provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it

20  becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense

21  of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a

22  grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60

23  (citations omitted). Other than these circumstances demonstrating the unavailability of an

24  administrative remedy, the mandatory language of 42 U.S.C. § 1997e(a) "foreclose[es] judicial

25  discretion," which "means a court may not excuse a failure to exhaust, even to take such [special]

26  circumstances into account." Id., at 1856-57. "The only limit to § 1997e(a)'s mandate is the one

27  baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'"

28  Id. at 1862.

Failure to exhaust administrative remedies is an affirmative defense that must be raised by defendants and proven on a motion for summary judgment.  See Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014), cert. denied, 135 S. Ct. 403 (2014).  The Court of Appeals has laid out the following analytical approach to be taken by district courts in assessing the merits of a motion for summary judgment based on the alleged failure of a prisoner to exhaust his administrative remedies:

> [T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy. . . .  Once the defendant has carried that burden, the prisoner has the burden of production.  That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. However, . . . the ultimate burden of proof remains with the defendant.

Albino, 747 F.3d at 1172 (citation and internal quotations omitted).  If a district court concludes that a prisoner failed to exhaust his available administrative remedies on a particular claim, the proper remedy is dismissal of that claim.  See Jones, 549 U.S. at 223-24 (rejecting requirement of total exhaustion); Lira v. Herrera, 427 F.3d 1164, 1175 (9th Cir. 2005) (rejecting "adoption of a total exhaustion-dismissal rule").  Nevertheless, if a prisoner fails to comply with procedural requirements in pursuing a claim but prison officials address the merits of that claim, then the prisoner is deemed to have exhausted his available administrative remedies.  See Reyes v. Smith, 810 F. 3d 654 (9th Cir. 2016).

### 2.   CDCR Procedures for Processing Staff Complaints

In Brown v. Valoff, supra, 422 F.3d 926, which has been addressed by all parties and remains binding precedent, the Ninth Circuit Court of Appeals examined CDCR's procedures for processing staff complaints.[3]  The Court relied on CDCR Administrative Bulletin 98-10, of which

---

[3]  The undersigned finds no merit to defendant Hall's suggestion that Brown is no longer good law under the Supreme Court's decision in Ross, which forecloses judicial discretion to excuse a failure to exhaust based on special circumstances that do not come within one of the Court's three identified exceptions.  See ECF No. 96 at 3-4; Ross, 136 S. Ct. at 1856-57.  This court's analysis relies on established CDCR procedures, not on a judicially created exception.

this court takes judicial notice.[4]  The Bulletin underscored the necessity of separately addressing appeals alleging staff misconduct and appeals challenging other issues, even if the matters are related:

> It is imperative that all staff complaints be handled in a timely fashion.  It is equally important that appeals coordinators **do not log allegations of serious staff misconduct into other appeal categories.**  [¶]  When an appeal alleges staff misconduct and other issues; e.g., dismissal of a Rules Violation Report or property loss, the inmate/parolee shall be notified that the staff complaint is being handled and that the other issue(s) must be appealed separately.  Likewise, if an inmate/parolee files two appeals, one alleging staff misconduct and another appeal which might normally be combined with the staff complaint appeal for the purpose of a response, the appeals **shall not be combined**.

CDCR Administrative Bulletin 98-10 at 1 (original emphasis).  The Bulletin further required that, when a staff complaint warrants a formal investigation, "the appeals coordinator shall bypass First Level of Review, respond at the Second Level of Review [], and refer the case for formal investigation," informing the prisoner only "that the appeal was granted or partially granted" and that he or she "will be notified only of the conclusion of the investigation."  Id.

The procedures articulated in CDCR's Administrative Bulletin 98-10 and relied on by the Ninth Circuit in Brown, as discussed further below, are also reflected in the 2011 CDCR regulations that applied to plaintiff's staff complaint.  In 2011, as now, CDCR prisoners were generally required to exhaust routine inmate appeals through three levels of administrative review.  See 15 Cal. Code Regs. § 3084.1-3084.9 (2011).[5]  "Unless otherwise stated in these regulations, all appeals are subject to a third level of review . . .before administrative remedies are

---

[4]  CDCR's Administrative Bulletin 98-10 (issued August 21, 1998) was filed in this court by the Office of the California Attorney General as an exhibit in Walker v. Whitten, 2011 WL 1466882, 2011 U.S. Dist. LEXIS 41759 (E.D. Cal. Apr. 18, 2011) (Case No. 2:09-cv-0642 WBS GGH P), which is addressed below.  See Docket in Case No. 2:09-cv-0642 WBS GGH P, at ECF No. 50-1 at 2-3 (Ex. A).  A court may take judicial notice of its own records and those of other courts.  See United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); see also Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned).

[5]  These provisions regarding the processing of inmate appeals reflect amendments that became effective January 28, 2011.  These provisions were recently amended and renumbered by emergency regulations effective June 1, 2020.  See OAL Matter Number: 2020-0309-01; see also 15 Cal. Code Regs. tit. 15, §§ 3480 et seq. (2020).

deemed exhausted." Id. § 3084.1(b).[6] "[A] cancellation or rejection decision does not exhaust administrative remedies." Id.

To initiate an appeal, an inmate was required to timely submit a CDCR Form 602 Inmate/Parolee Appeal limited to "one issue or related set of issues," id. § 3084.2(a)(1); that "list[ed] all staff member(s) involved and shall describe their involvement in the issue;" id. § 3084.2(a)(3); and "stat[ed] all facts known and available to [the inmate] regarding the issue being appealed at the time of submitting" the appeal form," id. § 3084.2(a)(4). See also § 3084.8 (setting forth time limits).  Information not presented, or reasonably construed as presented, in the original appeal could not later be exhausted.  "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 [] Inmate/Parolee Appeal, which is incorporated by reference, and addressed through all required levels of administrative review up to and including the third level." Id. § 3084.1(b).

Inmate appeals alleging staff misconduct required expedited review and processing.  As then provided:

> (4)  When an appeal is received that describes staff behavior or activity in violation of a law, regulation, policy, or procedure or appears contrary to an ethical or professional standard that could be considered misconduct as defined in subsection 3084(g), whether such misconduct is specifically alleged or not, the matter shall be referred pursuant to subsection 3084.9(i)(1) and (i)(3), to determine whether it shall be:
>
> > (A)  Processed as a routine appeal but not as a staff complaint.
> > (B)  Processed as a staff complaint appeal inquiry.
> > (C)  Referred to Internal Affairs for an investigation/inquiry.
>
> (5)  If an appeal classified as a staff complaint includes other non-related issue(s), the provisions of 3084.9(i)(2) shall apply [requiring that non-related issues be separately appealed and exhausted].[7]

---

[6]  Unless otherwise noted, citations to CDCR regulations reflect those operative in 2011.

[7]  Cal. Code Regs. tit. 15, § 3084.9(i)(2) provided: "When an appeal is accepted alleging staff misconduct that also includes any other issue(s), the appeals coordinator at the time the appeal is accepted as a staff complaint shall notify the inmate or parolee that any other appeal issue(s) may only be appealed separately and therefore resubmission of those issues is required if the intention is to seek resolution of such matters. Upon receiving such a notice, the inmate or parolee has 30 calendar days to submit separate appeal(s) regarding the other issue(s)."

1   Cal. Code Regs. tit. 15, § 3084.5(b).

2       "Staff complaints" were listed in CDCR regulations as one of several "Exceptions to the

3   Regular Appeal Process." Id. § 3084.9(i).  A staff complaint alleging conduct that "would likely

4   lead to adverse personnel action" was referred to the OIA for investigation.  Id. § 3084.9(i)(3)(A).

5   The appeal response was limited to informing the inmate of "either" the "referral for investigation

6   and the status of the investigation" as well as "the outcome at the conclusion of the investigation,"

7   id. § 3084.9(i)(4)(A), or "[t]he decision to conduct a confidential inquiry and whether the findings

8   determined that the staff in question did or did not violate departmental policy with regard to each

9   of the specific allegation(s) made," id. § 3084.9(i)(4)(B).

10       The rule that inmates be provided only limited information concerning the progress and

11   outcome of staff complaints continues to be reflected in CDCR's Department Operations Manual

12   (DOM).  See CDCR DOM § 54100.25.2 (2020).  Moreover, CDCR emergency regulations

13   effective June 1, 2020 make clear that an appeal decision stating that a claim is "Under Inquiry or

14   Investigation" exhausts the inmate's administrative remedies.  An appeal decision identifying a

15   claim as "Under Inquiry or Investigation" means "that the claim is under an allegation inquiry or

16   formal investigation by departmental staff or another appropriate law enforcement agency[.]"

17   Cal. Code Regs. tit. 15, § 3483(i)(8) (2020).  Further, "[c]ompletion of the review process by the

18   Institutional or Regional Office of Grievances resulting in a decision found in subsection

19   3483(i)(8). . . *does constitute exhaustion of all administrative remedies available to a claimant*

20   within the Department.  No appeal is available because the claim was exhausted at the conclusion

21   of the review by the Institutional or Regional Office of Grievances." Id. § 3483(m)(2) (emphasis

22   added).

23           **3.**     **Undisputed Facts Relevant to Administrative Exhaustion**

24       • Plaintiff alleges that his constitutional rights were violated by defendants on November

25   6, 2011.

26       • Plaintiff submitted only one inmate appeal regarding the incident that gives rise to this

27   action.  Pl. Depo. at 31:15-8.  That appeal, submitted on November 9, 2011 and designated

28   Institutional Log No. SAC-11-01044, alleged that defendant Oleachea used excessive force

against plaintiff on November 6, 2011, when plaintiff was with his wife in the prison visiting

area.  FAC, Ex. D (ECF No. 9 at 27-30).  Plaintiff characterized the appeal as a "staff complaint"

and identified the relief he sought as "[t]hat he [Oleachea] be reprimanded and removed from the

visiting area."  Id. at 27.

• The appeal was "partially granted" on First Level Review (FLR) on January 18, 2012,

following an interview of plaintiff on December 21, 2011.  Mark Decl., Ex A (ECF No. 82-3 at

30-1).  The FLR decision, labeled a "Staff Complaint Response," informed plaintiff that the

matter was referred to the Office of Internal Affairs (OIA) "for follow-up and a possible

investigation," and that plaintiff would be informed of the results.[8]  The FLR decision further

indicated that "[a]n investigation is being conducted by OIA," and "[t]he inquiry is not yet

complete."  Id. at 31.  Finally, the FLR decision informed plaintiff of the requirement that he

exhaust his administrative remedies if he intended to "appeal the decision."  Id.  As set forth

therein:

> Allegations of staff misconduct do not limit or restrict the availability
> of further relief via the inmate appeals process.  If you wish to appeal
> the decision, **you must submit your staff complaint appeal**
> **through all levels of appeal review up to, and including, the**
> **Director's Level of Review.  Once a decision has been rendered**
> **at the Director's Level of Review, your administrative remedies**
> **will be considered exhausted.**

Id. (emphasis added).

• On February 20, 2012, plaintiff resubmitted his appeal on the ground he was dissatisfied

with the FLR decision, stating in full:

> Dissatisfied.  I include in this that, I name Tim Virga, Warden; J.
> Hall, Sergeant; S. Detlefsen, Lt.; R. Sandoval, C/O; and L.
> Hammons, C/O, in the co-habitation [sic] of this incident.

FAC, Ex. D (ECF No. 9 at 30).

• The appeal was "partially granted" on Second Level Review (SLR) on April 17, 2012.

---

[8]  The FLR decision stated in pertinent part: "If investigated, upon completion of that investigation you will be notified as to whether the allegations were SUSTAINED, NOT SUSTAINED, UNFOUNDED, EXONERATED or that NO FINDING was possible.  In the event the matter is not investigated, but returned by OIA to the institution or region to conduct a Confidential Inquiry, you will be notified upon the completion of that inquiry as to whether it was determined that staff violated, or did not violate[,] policy."  ECF No. 82-3 at 30.

1    Mark Decl., Ex. A (ECF No. 82-3 at 32-3).  The SLR decision, identified as a "Staff Complaint

2    Response," did not reference plaintiff's additional allegations.  The SLR decision was virtually

3    identical to the FLR decision, again informing plaintiff that the matter was referred to the OIA,

4    that [a]n investigation is being conducted by the Office of Internal Affairs," and "[t]he inquiry is

5    not yet complete."  Id. at 32.  In the same language provided on the FLR decision, the SLR

6    decision informed plaintiff of the requirement that he exhaust his administrative remedies if he

7    intended to "appeal the decision."  Id. at 32-3.

8         • On May 8, 2012, plaintiff resubmitted his appeal for TLR on the ground he was

9    dissatisfied with the SLR decision, stating in full:

10                  Dissatisfied.    [I'd] like to note that I also request monetary
                    compensation of fifty thousand dollars from each individual and
11                  twenty-five thousand from C/O Sandoval.

12   FAC, Ex. D (ECF No. 9 at 30).

13        • On May 11, 2012, plaintiff's appeal was received by the Office of Appeals (OOA).[9]

14   See generally, Moseley Decl., ¶¶ 1-11 & Ex. A (ECF No. 82-5 at 1-7; ECF No. 89-2 at 65-72).

15        • On June 1, 2012, the OAA screened out the appeal because supporting documents were

16   not attached.  Moseley Decl., ¶ 9 & Ex. A (plaintiff's computerized appeal history); see also ECF

17   No. 9 at 28 (TLR notation on plaintiff's submitted appeal).

18        • On June 29, 2012, plaintiff resubmitted the appeal to the OAA.  Moseley Decl., ¶ 10 &

19   Ex. A.

20        • On July 31, 2012, the OAA again rejected the appeal, apparently on the ground that it

21   was incomplete, unsigned or undated.  Moseley Decl., ¶ 10 & Ex. A; see also ECF No. 9 at 28

22   (TLR notation on plaintiff's submitted appeal); Pl. Depo at 35:13-25 (acknowledging that

23   plaintiff had "two changes [sic] to resubmit this grievance for third level review" but did not do

24   so).

25        • Plaintiff testified that his appeal was returned to him at TLR with notice that he hadn't

26   signed it.  Pl. Depo. at 32:11-34:2 (referencing plaintiff's lack of signature on Section F of his

27

28   [9]  Before the OAA, Appeal Log No. 1113916 was also designated Institutional Log No. SAC-11-
     01044.  Moseley Decl. ¶ 8.

                                                    12

original appeal, see ECF No. 9 at 28).

• Plaintiff testified that he did not resubmit the appeal for TLR because "[f]irst of all it was partially granted, and second of all is when you send in a staff complaint that procedure in itself is exhausted because it doesn't go through the regular appeal procedures." Pl. Depo at 34:3-9.

• In the form portion of his FAC, plaintiff checked boxes indicating that there was an administrative appeal or remedy process available at his institution, that he filed an appeal or grievance concerning all the facts contained in the complaint, and that the process was completed. ECF No. 9 at 2.

• In his verified statements addressing the pending motions, plaintiff states that he never received notice that the OIA investigation was concluded. ECF No. 95 at 7 n.3. However, he received a March 2013 subpoena to appear before the State Personnel Board in May 2013 as a witness in a personnel matter concerning defendant Oleachea, although ultimately he was not called to testify. Id. at 7 n.2; id. at 35. Plaintiff states that he "was told by CDCR Legal Affairs on March 21, 2013, [that] Defendant Oleachea was removed from visiting, and was reprimanded for his actions. This was all Plaintiff was asking for in his appeal." Id. at 8 n.4.

#### 4.       The Excessive Force Claim is Exhausted

Defendant has demonstrated that CDCR's administrative remedy process generally requires inmates to proceed through three levels of review to exhaust an inmate appeal. See Cal. Code Regs. tit. 15, §§ 3084-3084.9 (2011). Plaintiff failed to pursue his appeal of the excessive force grievance through a decision at the Third Level, although he was aware of the general requirement.[10] Defendant has thus satisfied his initial burden under Albino, 747 F.3d at 1172, of

---

[10] The FLR and SLR decisions responding to plaintiff's staff complaint appeal clearly informed him that "[i]f you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted." ECF No. 82-3 at 30-3. The record shows that plaintiff was aware of this requirement because he twice sought to exhaust his staff complaint appeal at TLR, by submitting it to the OAA on May 11, 2012 then, after its initial rejection, resubmitting it on June 29, 2012, when it was again rejected. After the second rejection, plaintiff no longer pursued TLR.

1   demonstrating a failure to complete the state's exhaustion process.  See Reyes v. Smith, 810 F.3d

2   654, 657 (9th Cir. 2016) (a California inmate exhausts administrative remedies by obtaining a

3   decision at each of the three available levels of review).  Accordingly, the burden shifts to

4   plaintiff to "come forward with evidence showing that there is something in his particular case

5   that made the existing and generally available administrative remedies effectively unavailable to

6   him." Albino, 747 F.3d at 1172.

7        "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of

8   use; at hand.'" Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino at

9   1171).  "[A]n inmate is required to exhaust those, but only those, grievance procedures that are

10  'capable of use' to obtain 'some relief for the action complained of.'" Ross, 136 S. Ct. at 1858

11  (quoting Booth, 532 U.S. at 738).  Here, plaintiff contends that referral of the appeal to the OIA

12  rendered further administrative remedies effectively unavailable.  Plaintiff asserts that the

13  circumstances of his case parallel those of Brown v. Valoff, supra, 422 F.3d 926.  ECF No. 93 at

14  3 n.1.  He argues that his appeal, like Brown's, was "partially granted" and "relinquished to

15  Internal Affairs for investigation," leaving plaintiff with "nothing left to appeal to either the

16  Institution Appeals Coordinator and/or the Appeals Examiner at the Third Level."  ECF No. 93 at

17  4-5; see also ECF No. 95 at 3-5.  Plaintiff contends that defendants have failed to identify what

18  other relief remained available to him and that referral of his staff complaint to the OIA rendered

19  other officials without "jurisdiction" to further address it.[11]

20       Defendants respond that plaintiff was required to exhaust his appeal through TLR because

21  he was expressly informed of this requirement in both the FLR and SLR decisions.  As earlier

22  noted, this instruction informed plaintiff of the following:

23  _____

24  [11]  Plaintiff also argues more generally that the "partial grant" of his appeal was a satisfactory
result precluding the necessity for requesting further administrative relief.  It is true that an inmate
"has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to

25  exhaust his administrative remedies." Harvey v. Jordan, 605 F.3d 681, 684-85 (9th Cir. 2010).
However, this principle is unhelpful in determining whether an inmate has sufficiently exhausted

26  his administrative remedies.  "Mere contention of satisfaction is not sufficient . . . to exhaust [a

27  prisoner's] administrative remedies in accordance with Harvey." Cunningham v. Ramos, 2011
WL 3419503, at *4, 2011 U.S. Dist. LEXIS 85997, at *10 (N.D. Cal. Aug. 3, 2011) (Case No. C

28  11-0368 RS PR).

> Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.  If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review.  Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

ECF No. 82-3 at 31, 32-3.  Defendants contend that this instruction renders plaintiff's circumstances closer to those of inmate Hall than appellant Brown in Brown v. Valoff, because Hall had been informed that he was required to obtain a TLR decision but did not do so, and the Ninth Circuit found that he had not exhausted his administrative remedies.  Brown, 422 F.3d at 933.

In Brown, the Court of Appeals examined whether the staff complaint appeals submitted by two different prisoners – P. Brown and R. Hall – were administratively exhausted before the prisoners commenced suit in federal court.  Both appeals were denied on FLR.  Brown's appeal, which alleged excessive force against one officer and sought monetary damages, was "partially granted" at SLR when it was designated a staff complaint and referred to the OIA.  The SLR decision did not inform Brown that further administrative remedies were available, and Brown did not seek TLR.  Brown was not informed of the status of his staff complaint until he later inquired and was told that it had been "conducted and completed."  Brown, 422 F.3d at 931.  Brown thereafter filed a complaint in district court, which denied defendants' pre-Albino motion to dismiss,[12] finding that Brown had exhausted his administrative remedies on the following grounds:

> The [SLR] response contains no language suggesting that plaintiff could appeal the decision to the third level of review, and it is unclear what would be left to appeal, as plaintiff's appeal was partially granted and an investigation was to be conducted. . . . Plaintiff's inmate appeal grieved the facts at issue in this suit, and in granting plaintiff's appeal in part and referring the complaint for investigation by the Office of Internal Affairs, plaintiff was provided all of the relief that the administrative process could provide.

---

[12]  Prior to the Ninth Circuit's decision in Albino, the procedure for seeking pretrial resolution of an affirmative defense premised on a prisoner's alleged failure to comply with administrative exhaustion requirements was an "unenumerated Rule 12(b) motion."  See Albino, 747 F.3d at 1166 (overruling Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003)).

1   Brown, 422 F. 3d at 932 (internal edits omitted).  The Court of Appeals agreed, relying on CDCR

2   Administrative Bulletin 98-10 to conclude that "no further relief was 'available' through the

3   appeals process once the staff misconduct investigation was opened."  Id. at 939.  As summarized

4   by the Court:

> The Bulletin explains that staff misconduct grievances are to be
> investigated *only* through the staff complaint process, thereby
> negating any possibility of a parallel investigation through the appeal
> process.  Thus, once Brown's grievance was categorized as a "Staff
> Complaint" – which the entry in the "appeal issue" box indicates it
> was – there was no possibility that it would be investigated again,
> separately, through the appeal process.

9   Id. at 938-39 (original emphasis) (fn. omitted).  The Court emphasized that the Bulletin "shunts

10   off such grievances into the Staff Complaint process."  Id. at 939 n.11.

11        The other inmate grievance examined by the Ninth Circuit in Brown was that of R. Hall,

12   who also alleged excessive force against one officer and sought monetary damages; his appeal

13   also alleged medical deliberate indifference and the improper taking of personal property.  Hall's

14   appeal was denied at SLR when it was designated a staff complaint and referred to OIA.  The

15   SLR decision informed Hall as follows:

> Your appeal is being answered as a staff complaint.  If the appeal
> contains other issues as well, i.e., disciplinary or property issues, the
> other issue(s) must be appealed separately.  This is in accordance
> with Administrative Bulletin 98/10, issued August 21, 1998.

19   Brown, 422 F.3d at 933 (fn. omitted).  Hall did not separately appeal his other claims and did not

20   pursue TLR.  After Hall filed suit in district court, that court denied defendants' pre-Albino

21   motion to dismiss, finding that Hall had exhausted his administrative remedies because "to the

22   extent the process could provide plaintiff with relief on the complaint stated, it provided such

23   relief when plaintiff's allegation of staff misconduct was referred for investigation."  Brown, 422

24   F.3d at 934.

25        The Ninth Circuit reversed.  The Court initially noted that Hall had been granted the same

26   relief as Brown on SLR ("a full staff complaint investigation") and therefore that the "denial" of

27   Hall's appeal was in effect indistinguishable from the "partial grant" of Brown's appeal.  Id. at

28   942.  However, because Hall filed his complaint in the district court before completion of the staff

16

investigation, the Court of Appeals implied that it was filed prematurely, stating:

> Until the staff misconduct investigation was completed, the Department had not had a full opportunity to investigate the complaint and to develop an understanding of the facts underlying it. Moreover, even absent any specific information regarding the results of the investigation, it is conceivable that a prisoner who learns that his allegations were "partially sustained" would be satisfied that he had been heard and proceed no further.

Brown, 422 F. 3d at 942; see also McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002) (exhaustion requirement must be satisfied prior to commencement of suit). This factor, together with Hall's failure to abide by the directive in the SLR decision that he separately pursue and exhaust any "other issues," led the Court to conclude that Hall had failed to exhaust his administrative remedies before commencing his federal action. Brown, 422 F.3d at 943.

In this case, plaintiff was informed at FLR and SLR that he had to obtain a TLR decision to exhaust his appeal. ECF No. 82-3 at 31, 32-3. This directive was vaguely qualified by the statement that "[a]llegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process." Id. The comparable instruction provided to R. Hall in Brown distinguished between claims that the OIA was addressing as a staff complaint and "other issues." Hall was informed that "[i]f the appeal contains other issues as well, i.e., disciplinary or property issues, the other issue(s) must be appealed separately." Brown, 422 F.3d at 933. The Court of Appeals found that Hall had not exhausted his administrative remedies because he commenced federal suit before the OIA reached a decision on his staff complaint and because he had not separately appealed his "other issues." The instant case is distinguishable: plaintiff commenced federal suit after the OIA reached a decision on his staff complaint; plaintiff was not clearly informed that "other issues" needed to be "appealed separately;" and plaintiff, unlike R. Hall, attempted to obtain TLR.

The court agrees with plaintiff that his circumstances are more like those of the Brown v. Valoff appellant, who was held to have exhausted his claim because his "inmate appeal grieved the facts at issue in this suit, and in granting plaintiff's appeal in part and referring the complaint for investigation by the Office of Internal Affairs, plaintiff was provided all of the relief that the administrative process could provide." Brown, 422 F. 3d at 932 (internal edits omitted).

1      More importantly, as plaintiff asserts, defendants have not identified what relief would

2  have been available to plaintiff on a TLR review of his staff complaint.  The rejections of

3  plaintiff's requests for TLR do not disclose this information.[13]  Defendants' only argument is that

4  plaintiff failed to abide by identical instructions in his FLR and SLR appeal responses that "you

5  must submit your staff complaint appeal through all levels of appeal review up to, and including,

6  the Director's Level of Review," and "[o]nce a decision has been rendered at the Director's Level

7  of  Review, your administrative remedies will be considered exhausted."  ECF No. 82-3 at 31-3.

8  It is insufficient for defendants to rely on language informing plaintiff that he must pursue further

9  administrative review if no further relief is available.  See Willard v. Sebok, 2016 WL 1742999,

10  at *6, 2016 U.S. Dist. LEXIS 58180, at *16 (C.D. Cal. Mar. 18, 2016) (Case No. 1:13-cv-02251

11  SJO JEM) ("The Court rejects any notion that, simply because an appeal is available, an inmate

12  must pursue it even if no relief is available, as inconsistent with Brown.")), report and

13  recommendation adopted, 2016 WL 1735799, 2016 U.S. Dist. LEXIS 58178 (C.D. Cal., May 1,

14  2016).

15      Defendant's inability to identify what further relief plaintiff may have obtained on TLR

16  reflects a failure to distinguish staff complaints from other inmate appeals.  A majority of courts

17  within this Circuit have held that Brown compels the conclusion that a prisoner's administrative

18  remedies for pursuing a staff complaint appeal are exhausted when an OIA investigation is

19  ordered.  See e.g. Walker v. Whitten, 2011 WL 1466882, at *3, 2011 U.S. Dist. LEXIS 41759, at

20  *9-11 (fn. omitted) (E.D. Cal. Apr. 18, 2011) (Case No. 2:09-cv-0642 WBS GGH P) (finding,

21  based on Brown and Administrative Bulletin 98-10, that "an appeal of a complaint categorized as

22  _____

[13]  The reasons why plaintiff's requests for TLR were rejected remain unclear.  Plaintiff testified
23  that his appeal was returned to him on TLR because he hadn't signed it, Pl. Depo. at 32:11-34:2,
    then that he declined to further pursue TLR because the appeal was "partially granted" and "when
24  you send in a staff complaint that procedure in itself is exhausted because it doesn't go through
    the regular appeal procedures," id. at 34:3-9.  Defendants both rely on the declaration of H.
25  Moseley, CDCR Associate Director of the Office of Appeals (OOA) (previously named the
    Inmate Appeal Branch (IAB)).  See ECF No. 82-5 at 1-7; 89-2 at 65-72.  Referencing the OOA
26  electronic record of plaintiff's efforts to pursue his appeal at TLR, Moseley states that the appeal
    was initially screened out on June 1, 2012 because supporting documents were not attached.
27  Moseley Decl. ¶ 9 & Ex. A.  Less precisely, Moseley states that the appeal was later screened out
    on July 31, 2012 "because it was incomplete, unsigned, or undated."  Id. ¶ 10 & Ex. A.

28

a 'staff complaint' [is] exhausted once an investigation [is] ordered") (collecting cases)).[14]  Thus, language directing a prisoner to pursue further administrative review on a staff complaint, after an investigation has been ordered, is alone "insufficient to meet defendants' burden of 'demonstrat[ing] that pertinent relief remain[s] available.'"  Walker, 2011 WL 1466882, at *4 (fn. omitted), 2011 U.S. Dist. LEXIS 41759, at *9 (fn. omitted) (quoting Brown, 422 F.3d at 936-37) (collecting cases).[15]  Accord, Smith v. Cruzen, 2017 WL 7343445, at *9, 2017 U.S. Dist. LEXIS 222552, at *30 (N.D. Cal. May 2, 2017) (Case No. 14-cv-04791 LHK PR) ("[E]ven though the language from the response at the second level of review included information regarding exhaustion, that language appears to be formulaic, and does not equate to a finding that further relief actually remained available." (citing Brown, 422 F.3d at 939));  Foster v. Verkouteren, 2009 WL 2485369, at *5, 2009 U.S. Dist. LEXIS 70874, at *14 (S.D. Cal. Aug. 12, 2009) (Case No. 08-cv-0554 CAB) (although the inmate was "'specifically advised' to submit his appeal to the second level review. . . . the advisement appears to be standard language and not a clear indication that further was available to Plaintiff") (citing Brown, 422 F.3d at 935 n.10);  Aubert v. Elijah, 2010 WL 3341915, at *6, 2010 U.S. Dist. LEXIS 86798, at *17, 19 (E.D. Cal. Aug. 24, 2010) (Case No. 1:07-cv-01629 LJO GSA PC) (noting that "the Brown court's decision

---

[14]  In Walker, plaintiff was notified on SLR that his staff complaint was partially granted, that an investigation had concluded, and that the investigation revealed no evidence to support his allegations.  Walker nevertheless requested TLR, in deference to language in the appeal response (identical to that in the instant case) that "[a]llegations of misconduct do not limit or restrict the availability of further relief via the inmate appeals process."  Walker, 2011 WL 587556, at *5, 2011 U.S. Dist. LEXIS 12649, at *14 (E.D. Cal. Feb. 9, 2011), report and recommendation adopted as modified, Walker, supra, 2011 WL 1466882, 2011 U.S. Dist. LEXIS 41759 (E.D. Cal. Apr. 18, 2011).  Walker filed suit in federal court before he received a TLR response which later informed him that no further administrative remedies remained once the investigation was ordered.  The district court denied defendants' pre-Albino motion to dismiss Walker's suit on exhaustion grounds.

[15]  The Walker decision noted that a minority of district courts had relied on similar language to find a lack of exhaustion.  See Walker, 2011 WL 1466882, at *4 n.6, 2011 U.S. Dist. LEXIS 41759, at *12-3 n.6 (collecting cases); see also Fialho v. Herrera, 2017 WL 2839621, at *2,  2017 U.S. Dist. LEXIS 102946, at *3-4 (S.D. Cal. July 3, 2017) (Case No. 16-cv-1170 MMA DHB), and cases cited therein (declining to apply the holding in Cunningham, supra, 2011 WL 3419503, 2011 U.S. Dist. LEXIS 85997, which found nonexhaustion where an inmate failed to adhere to a directive that he pursue TLR of his staff complaint, on the ground that "[t]he Ninth Circuit's statement of the law in Brown is controlling, whereas an unpublished district court decision applying that law is, at best, instructive.").

1   rested on the determination that Brown *had* no further remedies available, not that he was *not*

2   *informed* of further remedies," and finding "the fact that Plaintiff was notified about the

3   Director's Level does not support Defendant's argument that further remedies were available to

4   Plaintiff, or that Plaintiff should have believed further remedies were available") (original

5   emphasis).

6        For all these reasons, the court finds that plaintiff has met his burden of demonstrating that

7   "the existing and generally available administrative remedies [were] effectively unavailable to

8   him." Albino, 747 F.3d at 1172.  Specifically, TLR was effectively unavailable to provide further

9   relief "as a practical matter," Williams, 775 F.3d at 1191, because the appeal was a staff

10  complaint that resulted in a full investigation.  "[A]n inmate is required to exhaust those, but only

11  those, grievance procedures that are 'capable of use' to obtain 'some relief for the action

12  complained of.'" Ross, 136 S. Ct. at 1858 (quoting Booth, 532 U.S. at 738).

13       Defendant bears the ultimate burden of proving that a prisoner failed to exhaust his

14  administrative remedies.  Albino, 747 F.3d at 1172.  Here, defendant's failure to identify what

15  further relief was available to plaintiff at the Third Level defeats his nonexhaustion defense.

16  "This lack of clarity must be borne by defendants.  It is defendants' burden to show that some

17  practical relief remained available to plaintiff regarding his grievance against them at the third

18  level of review." Cato v. Darst, 2020 WL 2772089, at *10, 2020 U.S. Dist. LEXIS 93522, at *27

19  (E.D. Cal. Mar. 23, 2020) (Case No. 2:17-cv-1873 TLN EFB P) (relying on Brown to find that

20  defendants had "not discharged their burden of showing that plaintiff failed to exhaust available

21  remedies"), report and recommendation adopted, 2020 WL 2770372, 2020 U.S. Dist. LEXIS

22  93523 (E.D. Cal., May 28, 2020).[16]

23  ───────────────────

24  [16]  Accord, Ramirez v. Johnson, 2019 WL 4198644, at *11, 2019 U.S. Dist. LEXIS 166880, at
    *30 (C.D. Cal. June 19, 2019) (Case No. 2:17-cv-07788 DSF KES) ("Defendants have not
25  demonstrated that 'pertinent relief' remained 'as a practical matter, "available."'" (quoting
    Brown, 422 F.3d at 936-37), report and recommendation adopted, 2019 WL 6486034, 2019 U.S.
26  Dist. LEXIS __ (C.D. Cal. Sept. 24, 2019); see also Cottrell v. Wright, 2010 WL 4806910, at *6,
    2010 U.S. Dist. LEXIS 122147, at *17 (E.D. Cal. Nov. 18, 2010) (Case No. 2:09-cv-0824 JAM
27  KJM P) ("Even if there were further action on the staff complaint that appeal to the second and
    Director's levels of review could have sparked, defendants have not shown that such remedies
28  were available in this case.") (citing Brown), report and recommendation adopted, 2011 WL

For all the reasons explained above, the court finds that plaintiff exhausted his available administrative remedies with regard to his excessive force claim against defendant Oleachea when he was informed by the SLR decision that the claim was being investigated by the OIA.

### 5.   <u>The Retaliation Claim is Unexhausted</u>

A different analysis applies to the exhaustion status of plaintiff's retaliation claim.  An inmate appeal exhausts a claim only if it adequately informed prison officials of the problem grieved.  "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress."  <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 824 (9th Cir. 2010).  "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution […]."  <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009) (citations omitted).  "The grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'"  <u>Reyes v. Smith</u>, 810 F.3d 654, 659 (9th Cir. 2016) (quoting <u>Jones</u>, 549 U.S. at 219).

Institutional Log No. SAC-11-01044 alleged only that defendant Oleachea used excessive force against plaintiff on November 6, 2011 in the prison visiting area.  An improper use of pepper spray was the problem that the grievance identified, and to which prison officials were alerted.  To exhaust a retaliation claim, a grievance must inform prison officials that retaliation for prior speech is the problem that the inmate wants addressed.  Plaintiff's grievance did not do so.

Although plaintiff has alleged in this court that the use of pepper spray was motivated by retaliatory intent, the administrative staff complaint was silent about Oleachea's motive for the use of force.  Retaliatory motive is irrelevant to an excessive force claim, but is the very essence of a retaliation claim.[17]  Because the grievance did not allege that Oleachea was retaliating against plaintiff for engaging in protected activity, it failed to alert prison officials to a First Amendment

---

319080, 2011 U.S. Dist. LEXIS 8528 (E.D. Cal. Jan. 28, 2011).

[17]  To prevail on a retaliation claim, plaintiff must demonstrate that his exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's challenged conduct.  <u>See</u> <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing <u>Mt. Healthy City School District v. Doyle</u>, 429 U.S. 274, 287 (1977)).

violation.  Accordingly, plaintiff's staff complaint appeal against Oleachea did not exhaust a retaliation claim.  See Sapp, 623 F.3d at 824-825 (grievance about quality of medical care did not exhaust related claims involving denial of medical records review and handling of appeals); Griffin, 557 F.3d at 1121 (grievance of fall from upper bunk did not alert prison officials that staff had disregarded a lower-bunk order, barring suit on that basis).

For these reasons, the undersigned recommends that Oleachea's motion for summary judgment on grounds of administrative exhaustion be granted as to plaintiff's retaliation claim and denied as to plaintiff's excessive force claim.

## B.   Qualified Immunity and Merits of Excessive Force Claim

### 1.   Undisputed Facts

Defendant Oleachea has proffered the following undisputed facts, as narrowed by the court based on plaintiff's own statements in his verified FAC and at his deposition.  ECF No. 89-3 at 1-5.

• On November 6, 2011, plaintiff was visiting his wife in the prisoner visiting area at CSP-SAC, and defendant Oleachea was performing the responsibilities of "B Visit Control."

• Oleachea approached plaintiff and his wife and told them their visit was being terminated because plaintiff's wife was dressed inappropriately and in violation of CDCR's rules and regulations.  Plaintiff asked Oleachea if his wife could put on her sweater so they could continue their visit, and Oleachea said, "No."

• Oleachea ordered plaintiff to leave the visiting room but he refused and instead sat down at a visitor table.  Oleachea warned plaintiff he could be pepper sprayed if he continued to refuse to leave the visiting area, but plaintiff did not leave.

• Oleachea told plaintiff's wife and other individuals to move out of the way so they would not be sprayed.  Oleachea told plaintiff a third time to leave the visiting area, but plaintiff did not do so.

• Oleachea then pepper sprayed plaintiff, who got up and walked in the opposite direction.  Oleachea pepper sprayed plaintiff on the back of his head.  Plaintiff changed direction

1    and Oleachea sprayed him a third time in the back and yelled, "Get down."

2         • As plaintiff was getting down to the ground, Oleachea sprayed him a fourth time.

3                            **2.      Merits Analysis**

4         "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places

5    restraints on prison officials, who may not . . . use excessive physical force against prisoners."

6    Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)).

7    "[W]henever prison officials stand accused of using excessive physical force in violation of the

8    [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith

9    effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson,

10   503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)). When determining whether the

11   force was excessive, we look to the "extent of the injury . . . , the need for application of force, the

12   relationship between that need and the amount of force used, the threat 'reasonably perceived by

13   the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'"

14   Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321).

15        Defendant Oleachea seeks summary judgment on the merits of plaintiff's excessive force

16   claim. Defendant contends the undisputed facts demonstrate that his "slight use" of a "small

17   amount" of pepper spray was justified to restore discipline because plaintiff repeatedly refused to

18   comply with a lawful command. ECF No. 89-1 at 1, 10. Plaintiff responds that defendant fails to

19   address the inconsistencies in his own stated reasons for pepper spraying plaintiff, which are

20   relevant in assessing whether the use of force was excessive. Plaintiff notes that defendant's

21   statements in his summary judgment motion do not reflect his statements in the incident report, in

22   which Oleachea stated that he pepper-sprayed plaintiff because he thought plaintiff was going to

23   attack him. See ECF No. 95 at 8-14, and citations to the record therein. Defendant responds that

24   plaintiff's attempted reliance on the "sham affidavit rule" is unavailing because both rationales

25   were included his incident report. ECF No. 98 at 5-6 ("Officer Oleachea's incident report details

26   both Dixon's repeated failure to follow his lawful orders as well as his belief that Dixon's refusal

27   coupled with other behavior suggested he might attack Oleachea, other staff, or the public. These

28   statements are not contradictory.").

1    Defendant's actual reasons for pepper spraying plaintiff, and the priority of these reasons

2    at the time of the incident, are material in assessing whether Oleachea's use of force was

3    proportionate to the circumstances.  Whether Oleachea's primary goal was to restore discipline or

4    to protect himself, and whether there was a reasonable alternative to the use of pepper spray, are

5    critical factors in determining whether Oleachea's use of force was excessive.  See Hudson, 503

6    U.S. at 7.  Because reasonable jurors could disagree in making this assessment, the question

7    whether Oleachea used excessive force against plaintiff cannot be determined on summary

8    judgment.  Moreover, the parties reference a videotape of the challenged incident that is not part

9    of the current record.  See e.g. ECF No. 98 at 6 n.2.

10    For these reasons, the undersigned recommends that defendant Oleachea's motion for

11    summary judgment on the merits of plaintiff's excessive force claim be denied.

12    ### 3.    **Qualified Immunity**

13    Government officials are immune from civil damages "unless their conduct violates

14    'clearly established statutory or constitutional rights of which a reasonable person would have

15    known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457

16    U.S. 800, 818 (1982)).  See also Saucier v. Katz, 533 U.S. 194, 201 (2001) (identifying factors to

17    be assessed); Pearson v. Callahan, 555 U.S. 223, 236 (2009) (factors may be addressed in the

18    order most appropriate to "the circumstances in the particular case at hand").

19    Excessive force cases often turn on credibility determinations, and the excessive force

20    inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw

21    inferences therefrom."  Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).  Therefore, "summary

22    judgment or judgment as a matter of law in excessive force cases should be granted sparingly."

23    Id.  Where, as here, facts relevant to the reasonableness of force used are disputed, the case

24    cannot be resolved at summary judgment on qualified immunity grounds.  See Liston v. County

25    of Riverside, 120 F.3d 965, 975 (9th Cir. 1997).

26    The qualified immunity inquiry turns on what a reasonable officer would have known was

27    unconstitutional under the circumstances, see Anderson v. Creighton, 483 U.S. 635, 640 (1987),

28    but the relevant circumstances in this case are not established by undisputed facts.  Accordingly,

1    qualified immunity is not a proper ground for summary judgment here.  See Santos, 287 F.3d at

2    853.

3                **V.      Defendant Hall's Motion for Summary Judgment (ECF No. 82)**

4           Like Oleachea, Hall argues that plaintiff's claims are barred by his failure to exhaust his

5    administrative remedies before filing suit.  The legal standards applicable to the nonexhaustion

6    defense, as well as the relevant facts, are set forth above and need not be repeated here.

7           The FAC alleges that Hall, a supervisor responsible for overseeing CSP-SAC's visiting

8    program, failed to protect plaintiff from Oleachea's assault due to her lack of awareness that

9    Oleachea had switched assignments with another officer to work in the visiting room on

10   November 6, 2011.  Plaintiff's inmate appeal, as initially framed, included only an excessive

11   force claim against Oleachea and requested only that Oleachea "be reprimanded and removed

12   from the visiting area."  ECF No. 9 at 27, 29.  The appeal identified no other officials and sought

13   no other relief.  Id.  Plaintiff himself designated the appeal a "staff complaint" against Oleachea

14   alone.  Id.  Moreover, only plaintiff's claim against Oleachea was addressed in the SLR response

15   and only plaintiff's claim against Oleachea was accepted by the OIA for investigation.  The

16   alignment of the OIA investigation with plaintiff's allegations is a significant factor in finding

17   plaintiff's claim against Oleachea exhausted on SLR.  See e.g. Petillo v. Peterson, 2018 WL

18   1313422, at *1-2, 2018 U.S. Dist. LEXIS 42140, at *3-4 (E.D. Cal. Mar. 13, 2018) (Case No.

19   1:16-cv-00488 AWI MJS PC) ("Plaintiff's administrative grievance was focused on the exact

20   matter to be considered in the staff complaint appeal inquiry . . . [and] nothing before the Court

21   suggests additional relief was available as a practical matter.").[18]

22          Only in his request for SLR did plaintiff attempt to add claims against other staff

23   members, including Hall, against whom plaintiff alleged only that they were "include[d] . . . in

24   the co-habitation [sic] of this incident."  Id. at 30.  Although plaintiff apparently learned of Hall's

25   challenged conduct after he submitted his staff complaint, see ECF No. 75 at 20-1. 48-9 (Ex. H),

26   _____

27   [18]  Although plaintiff did not receive the directive provided in some appeal decisions that issues
     distinct from those addressed in a staff complaint must be appealed separately, the absence of any
28   reference to the newly added staff members in the SLR decision should have alerted plaintiff to
     the possibility that he needed to separately appeal his claims against them.

which may have excused its late addition to a regular appeal,[19] plaintiff did not identify Hall's challenged conduct in his request for SLR review.  A grievance that does not "provide enough information to allow prison officials to take appropriate responsive measures" does not satisfy the exhaustion requirement.  Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004) (cited with approval in Griffin, 557 F.3d at 1121); see also Sapp, 623 F.3d at 828 (inmate cannot establish improper screening of an appeal that fails to alert prison officials to the alleged problem).

     Plaintiff's failure to adequately inform prison officials of his claim against Hall, together with the failure of prison officials to address any claim against Hall, render plaintiff's failure-to-protect claim against Hall unexhausted.  Therefore, this court recommends that defendant Hall's motion for summary judgment be granted and that Hall be dismissed from this action.

### VI.     <u>Plaintiff's Motion for Summary Judgment (ECF No. 75)</u>

     Plaintiff seeks summary judgment on his claim that defendant Oleachea used excessive force against him.  For the reasons previously stated in addressing Oleachea's motion for summary judgment, the undisputed facts do not support a determination as a matter of law whether the force used was excessive.  This is a question of fact that must be decided by a jury.  Accordingly, plaintiff's motion for summary judgment should be denied.

### VII.     <u>Conclusion</u>

     For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

     1.  Plaintiff's motion for summary judgment, ECF No. 75, be DENIED;

     2.  Defendant Hall's motion for summary judgment, ECF No. 82, be GRANTED and Hall be DISMISSED from this action pursuant to Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014); and

     3.  Defendant Oleachea's motion for summary judgment, ECF No. 89, be GRANTED IN PART and DENIED IN PART as follows:

     (a) GRANTED as to plaintiff's retaliation claim; and

---

[19]  See e.g. Shepard v. Borum, 2020 WL 1317340, at *2, 2020 U.S. Dist. LEXIS 48891, at *6 (E.D. Cal. Mar. 20, 2020) (Case No. 1:18-cv-00277 DAD JDP PC) ("a grievant [may] include facts about issues, information, or persons directly related to an existing inmate appeal that were not available at the time the appeal was originally submitted").

1      (b) DENIED as to plaintiff's excessive force claim.

2      These findings and recommendations are submitted to the United States District Judge

3  assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one (21)

4  days after being served with these findings and recommendations, any party may file written

5  objections with the court and serve a copy on all parties.  Such a document should be captioned

6  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

7  failure to file objections within the specified time may waive the right to appeal the District

8  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9  DATED: September 17, 2020

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

27